**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM C. BOUGHTON,

            Plaintiff,

      vs.                              1:13-CV-01583

TOWN OF BETHLEHEM,

            Defendant.

---

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


**DECISION and ORDER**

     Plaintiff William C. Boughton commenced the instant action pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et. seq.* ("ADA"), the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et. seq.* ("FMLA"), and the New York State Human Rights Law ("NYSHRL") against the defendant Town of Bethlehem. Defendant now moves for summary judgment.

**I. Facts**[1]

     In 2012, Plaintiff was employed by the Defendant, Town of Bethlehem, as a Water Treatment Plant Operator. (Defendant's Statement of Material Facts ("Defendant's Statement") dkt. #36-4

---

[1] Both parties filed the required Statement of Material Facts. Defendant's statement will be cited for facts which are not contradicted. Where the parties disagree, the Court will note that.

at ¶ 1). As a Water Treatment Plant Operator, Plaintiff was responsible for maintaining clean drinking water for the Town of Bethlehem. (Id. at ¶ 6).

On May 14, 2012 the Plaintiff sought emergency medical attention at St. Peter's Hospital after experiencing tightness in his chest and shortness of breath. (Id. at ¶ 15). Plaintiff was seen by his primary care physician, Dr. William Kowal, and a cardiologist, Dr. Robert Phang. (Id. at ¶¶ 18, 20). Dr. Kowal diagnosed him with uncontrolled hypertension and directed him to remain out of work. (Id. at ¶ 21).

According to the Plaintiff, he took Family Medical Leave beginning May 14, 2012 due to uncontrolled hypertension. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Mem.") dkt. #39 at 5). Plaintiff provided doctors' notes regarding his absence from work beginning on May 14. (Defendant's Statement at ¶ 23). Dr. Kowal's July 20, 2012 letter to Mary Tremblay-Glassman, Director of Human Resources, states in pertinent part: "(1) I strongly recommend [Plaintiff work] indoors with limited outdoor exposure as needed; (2) I strongly recommend that [Plaintiff] be provided a Powered Air Purifying Respirator (PaPRn)." (Id. at ¶ 26). Defendant contends that, since Dr. Kowal's July 20 note "did not explain the phrase 'limited outdoor exposure' and further did not specify the length of time of outdoor exposure, acceptable weather

conditions and temperatures, Plaintiff was asked for further
medical information to determine the extent of Plaintiff's
limitations and any potential reasonable accommodations that
could overcome said limitations." (Id. at ¶ 29). Defendant claims
it was willing to supply Plaintiff a respirator as requested.
(Id. at ¶ 28). Plaintiff argues that the Defendant never informed
him that this accommodation was available. (Plaintiff's Response
to Defendant's Statement of Material Facts ("Plaintiff's Res."),
dkt. #40 at ¶ 28). However, Plaintiff does not appear to dispute
this. (Plaintiff's Mem. at 15-16).

On August 2, 2012 Dr. Kowal sent an additional letter to the
Defendant, stating in pertinent part:

> [Plaintiff's] outdoor exposure should be limited to no
> more than 15 minute increments in hot/humid weather.
> The exact temperature is impossible to quantitate
> [sic], but such extreme weather exacerbates
> [Plaintiff's] shortness of breath and chest pain which
> given his hypertension could be detrimental to his
> health. Working indoors would be the best solution. The
> amount of cold weather tolerable is yet to be
> determined.

(Defendant's Statement at ¶ 30). Defendant alleges that Dr.
Kowal's second letter "did not specify any cold weather
restrictions, did not provide any of the requested specifics
regarding the temperatures during which exposure should be
limited, or any correlation between Plaintiff's hypertension and
the proposed accommodations." (Id. at ¶ 31). Plaintiff denies
that this letter was insufficient to describe his request for a

reasonable accommodation. (Plaintiff's Res. at ¶ 31). Defendant
asked Plaintiff to provide further information and "encouraged
[Plaintiff] to see a specialist who would be in a better position
to explain Plaintiff's condition and any related restrictions as
a result thereof." (Defendant's Statement at ¶ 31). Plaintiff
admits that Tremblay-Glassman encouraged him to see an Industrial
Medicine Specialist, but claims that the specialty does not
exist. (Plaintiff's Res. at ¶ 31). Plaintiff never responded to
this request. (Defendant's Statement at ¶ 33).

Plaintiff argues that by "repeatedly requesting additional
medical documentation" the Defendant "stonewalled [Plaintiff's]
requests." (Plaintiff's Mem. at 5). Defendant disagrees,
contending that the "request for further information was to
protect Plaintiff from being placed in a dangerous position while
at work and also to protect the Town of Bethlehem." (Defendant's
Statement at ¶ 32). Plaintiff claims that the Defendant
disregarded his alleged attempts to discuss how reasonable
accommodations could be met through a shift change. (Plaintiff's
Mem. at 5).

Defendant placed Plaintiff on no-pay status after he
exhausted his sick time, personal time, compensation time and
vacation time.  (Defendant's Statement at ¶ 36). An employee on
no-pay status is still an employee; employees are kept on no-pay
status with the assumption that the employee will eventually

return to work. (Id. at ¶ 37). Plaintiff never returned to work after May 14, 2012. (Id. at ¶ 35). Plaintiff concluded that the Defendant had constructively terminated him. (Id. at ¶ 33). Plaintiff commenced this action on December 23, 2013 by filing a Complaint alleging: (1) Discrimination under the ADA; (2) discrimination under the NYSHRL; (3) retaliation under the ADA; (4) retaliation under the NYSHRL; (5) retaliatory discharge under the FMLA; and (6) interference with Plaintiff's rights under the FMLA. *See* Complaint, dkt. #1. Plaintiff seeks monetary damages (compensatory and punitive), an award of front-pay compensating Plaintiff for loss of future salary and benefits, damages to compensate for non-pecuniary losses, and an award of the costs and disbursements of this action, including attorney's fees. Defendant answered, and the parties have now completed discovery. Presently before the Court is Defendant's motion for summary judgment.

## II. STANDARD

It is well-settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is

such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).

With this standard in mind, the Court will now address the Defendant's motion for summary judgment.

## III. DISCUSSION

Defendant argues that Plaintiff's response to the motion for summary judgment offers no opposition to the ADA retaliation

claim, the NYSHRL claims or the FMLA interference claim. Defendant contends that "because of Plaintiff's failure to respond, and because Defendant has met its burden, summary judgment should be entered against Plaintiff" for those claims. (Defendant's Reply Memorandum ("Defendant's Reply"), dkt. #41-2 at 5). Indeed, "a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted." Jackson v. Federal Exp., 766 F.3d 189, 194 (2d Cir. 2014). However, as the Court of Appeals for the Second Circuit notes, "A non-response does not risk a default judgment." *Jackson*, 766 F.3d at 194. "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Id. (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). In doing so, the court may rely on other evidence in the record even if uncited. Fed.R.Civ.P. 56(c)(3). "And, of course, the court must determine whether the legal theory of the motion is sound. Thus, Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." Jackson, 766 F.3d at 194.

The Court will therefore review all claims set forth in Plaintiff's complaint.

A. Discrimination Claims

    i. ADA

It is unclear whether Plaintiff's discrimination claim under the ADA alleges that the Defendant discriminated against him by failing to provide reasonable accommodations due to his alleged disability, *see* 42 U.S.C. § 12112(5)(a), or claims he was discriminated against because he was constructively discharged on the basis of his disability. *See* 42 U.S.C. § 12112(a). The Court will address both.

Courts interpreting claims of employment discrimination under the ADA follow the burden-shifting framework set out by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 52 (2d Cir. 1998). Under this framework, the "plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that his discharge was effected under circumstances giving rise to an inference of discrimination." <u>Id</u>. Once Plaintiff meets his burden, "the burden of production then shifts to the defendant, who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination" created when the plaintiff makes out a *prima facie* case. <u>Id</u>. If the employer meets this burden to "articulate an explanation that, if true, would connote lawful behavior," the burden then returns to "the plaintiff to persuade

the factfinder that the employer's proffered explanation is merely a pretext for unlawful discrimination." Greenway, 143 F.3d 47 at 52.

To satisfy the initial burden of proving a *prima facie* case, "a plaintiff must show (a) that his employer is subject to the ADA;[2] (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;[3] and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

Defendant alleges that Plaintiff cannot satisfy the initial burden because he is not disabled within the meaning of the ADA, and no adverse employment action was taken against Plaintiff "because of his purported disability." Defendant's Mem., dkt. #36-3 at 10.

*Disability under the ADA*

Under the ADA, as amended by the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted

---

[2] Defendant "does not dispute that it is subject to the ADA's anti-discrimination provisions." Defendant's Memorandum ("Defendant's Mem."), dkt. #36-3 at 10.

[3] Defendant "further does not dispute that Plaintiff was otherwise qualified to perform the duties of his job." Id.

by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The Act

defines "disability" as "(A) a physical or mental impairment that

substantially limits one or more major life activities of such

individuals; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." Id. § 12102(1). The ADAAA

expanded the interpretation of the ADA's three-category

definition of "disability." For example, "major life activity"

includes "caring for oneself, performing manual tasks...walking,

standing, lifting, bending, speaking, breathing...and working,"

as well as "the operation of a major bodily function," including

"neurological, brain, respiratory, circulatory, endocrine, and

reproductive functions." Pub.L. No. 110-325, 122 Stat. 3553, 3555

(2008).

Plaintiff's alleged disability is "uncontrolled

hypertension" with which he was diagnosed on May 14, 2012.

Plaintiff's Mem., dkt. #39 at 7. Plaintiff complains of related

illnesses including chest pain, difficulty breathing, and sleep

apnea. Id. Plaintiff argues that, since federal regulations

interpreting the ADAAA definition of "disability" cite conditions

similar to his own, Plaintiff's hypertension is, *per se*, a

disability.[4] Plaintiff is incorrect. The Court notes that the

record supports the inference that Plaintiff had a physical

---

[4]Plaintiff cites ADA Amendments Act of 2008, Sec. 4, §
3(4)(d), 122 Stat. 3553, 3555; 29 C.F.R. § 1630.2(j)(5).
Plaintiff's Mem., dkt. #39 at 8.

impairment, i.e., hypertension, and that the phrase "major life activities" is defined in the ADAAA Regulations to include breathing, working, and sleeping. 29 C.F.R. § 1630.2(i). However, the issue of whether a reasonable jury could find that Plaintiff's hypertension substantially limited one or more of his major life activities must be considered. *See* 42 U.S.C. § 12102(2); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998)("Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities.").

As interpreted by the ADAAA Regulations, an impairment "substantially limits" a major life activity when the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j). Determining whether an individual is substantially limited in a major life activity is an individualized assessment, and the comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. 29 C.F.R. § 1630.2(j).

Applying the above guidelines to the evidence viewed in the light most favorable to the Plaintiff, the Court finds that the Plaintiff fails to establish that his hypertension substantially limited his ability to breathe, work, and sleep. The medical evidence relating to Plaintiff's inability to breathe, work or sleep is: a May 15, 2012 letter from Sherry D. Sherman, RPA, informing the Defendant that the Plaintiff had been hospitalized and would be out of work for the next 8 days (Plaintiff's Res., dkt. #39-2); a May 22, 2012 prescription note from Dr. Kowal, the Plaintiff's internist, informing the Defendant that Plaintiff would be out of work until reevaluated on May 29, 2012 (Plaintiff's Res., dkt. #39-3); a May 29, 2012 prescription note from Dr. Kowal informing the Defendant that Plaintiff had been diagnosed with uncontrolled hypertension and chest pain and that prognosis is guarded until further evaluation by cardiologist, probable return to work date will be determined after his follow-up visit with [Dr. Kowal] on June 11, 2012 (Plaintiff's Res., dkt. #39-4); a June 25, 2012 prescription note from Dr. Kowal which states Plaintiff would be out of work until reevaluated on July 9, 2012 due to hypertension (Plaintiff's Res., dkt. #39-5); a July 20, 2012 letter from Dr. Kowal to Tremblay-Glassman stating:

> [Plaintiff] has been recently treated for several
> medical conditions including chest pain, headaches,
> uncontrolled hypertension, and sleep apnea. I support
> planned return to work date of 7/30/12 with the

12

following accommodations: (1) I strongly recommend
working indoors with limited outdoor exposure as needed
(2) I strongly recommend that he be provided a Powered
Air Purifying Respirator (PAPRn).

Plaintiff's Res., dkt. #39-6; and an August 2, 2012 letter from

Dr. Kowal to Tremblay-Glassman stating:

> [Plaintiff's] outdoor exposure should be limited to no
> more than 15 minute increments in hot/humid weather.
> The exact temperature is impossible to quantitate
> [sic], but such extreme weather exacerbates
> [Plaintiff's] shortness of breath and chest pain which
> given his hypertension could be detrimental to his
> health. Working indoors would be the best solution. The
> amount of cold weather tolerable is yet to be
> determined.

Plaintiff's Res., dkt. #39-7.[5]

---

[5]Defendant claims as a threshold matter that Dr. Kowal's
letters are inadmissable hearsay, citing Burgos v. City of
Rochester, No. 99 Civ. 6480, 2003 WL 22956907, at *3 (W.D.N.Y.
Mar.31, 2003) and Douglas v. Victor Capital Group, 21 F.Supp2d
379, 391 (S.D.N.Y. 1998). Defendant's Reply, dkt. #41-2 at 1-2.
    As a general matter, it is correct that unsworn letters from
physicians are inadmissible hearsay providing an insufficient
basis for opposing a motion for summary judgment. See
Fed.R.Civ.P. 56(e); Douglas, 21 F.Supp.2d at 391–92
(S.D.N.Y.1998)(Summary judgment granted in ADA case where the
only medical evidence plaintiff relied upon were inadmissible
hearsay doctor letters); see also United States v. All Right,
Title & Interest in Real Prop. & Appurtenances, 77 F.3d 648,
657–58 (2d Cir. 1996)("[T]he submission of [an] unsworn letter
was an inappropriate response to the ... motion for summary
judgment, and the factual assertions made in that letter were
properly disregarded by the court.") Nonetheless, the letters
here were submitted by Defendant, not Plaintiff, in support of
its motion for summary judgment. The notes were attached as
exhibits to Defendant's motion for summary judgement and
Defendant cited the letters and relied on them in seeking summary
judgment.
    Furthermore, it is undisputed that Dr. Kowal submitted the
letters to Defendant while the Plaintiff was still employed by
Defendant. The letters were part of Plaintiff's personnel file
and were considered by the Defendant when it allegedly refused

The Court finds that Plaintiff fails to establish his hypertension substantially limited his working, breathing or sleeping. Even in combination with Plaintiff's testimony, there is no material issue of fact raised with respect to whether Plaintiff qualifies as disabled under the Act. The Plaintiff testified that:

> Q: And did your doctor give you certain restrictions or limitations upon returning to work?
>
> A: Whatever the doctor's notes he wrote was.
>
> Q: Do you recall what those restrictions were?
>
> A: I don't recall all of them. Limited outdoors exposure I know was one of them.
>
> Q: Limited outdoor exposure, did you discuss that with your doctor, exactly what he meant by it?
>
> A: He talked about what my job descriptions were and how I was feeling at that time and he made his suggestion on what my limitations would be and what kind of-how I could go back to work.
>
> Q: Did he say why you should limit your outdoor exposure?
>
> A: I believe he was worried about something, but I'm not my doctor. I don't know.

---

the Plaintiff accommodations leading Plaintiff to believe he had been constructively terminated. Therefore, the letters are admissible evidence of Defendant's state of mind. See Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 65-66 & n. 2 (2d Cir. 2003)(holding in ADA case that out-of-court statements made to supervisor by other employees complaining about plaintiff were admissible to show supervisor's state of mind and therefore were not hearsay); see also Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). Therefore, the Court will consider them.

Q: He didn't tell you what he was worried about?

A: I'm sure he was worried about my hypertension, but he didn't talk in detail about the medical specific reasons.

Q: Okay. Your doctor that you are referring to, his name, please?

A: Dr. William Kowal.

Plaintiff's Deposition, dkt. #36-6, 77-78. Plaintiff also stated that he did not remember any specific conversations with any other doctors telling him to limit his outdoor exposure and that his blood pressure is controlled now and he has had no reoccurrence of chest tightness. Id. at 80 and 110.

"To prove that [he] suffers from a disability that substantially limits a major life activity, a plaintiff is required to do more than merely submit evidence of a medical diagnosis of an impairment." Cody v. County of Nassau, 577 F.Supp.2d 623, 639 (E.D.N.Y. 2008)(citations omitted). "Rather, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by the impairment in terms of their own experience is substantial." Id. at 640 (citations omitted). "As a result, a plaintiff cannot prevail on an ADA disability discrimination claim where [he] merely submits evidence that [he] suffers from an impairment." Id. (citation omitted).

Plaintiff has not submitted any evidence that hypertension substantially limited his ability to work. For an impairment to

15

substantially limit the major life activity of working, it must
render the individual "significantly restricted in the ability to
perform either a class of jobs or a broad range of jobs in
various classes as compared to the average person having
comparable training, skills and abilities." O'Connor v.
Huntington U.F.S.D., No. 11-CV-1275, 2014 WL 1233038, at *1
(E.D.N.Y. Mar. 25, 2014)(internal citations and quotation marks
omitted); see, e.g., Petrone v. Hampton Bays Union Free Sch.
Dist., No. 03-CV-4359, 2013 WL 3491057, at *21 (E.D.N.Y. July 10,
2013), aff'd, No. 13-2960-CV, 2014 WL 2198612 (2d Cir. May 28,
2014). "A class of jobs encompasses a breadth of positions
related to the one a plaintiff cannot perform, not simply
analogous positions with slight variations." Wegner v. Upstate
Farms Co-op., Inc., 560 F. App'x 22, 2014 WL 998195, at *2 (2d
Cir. 2014)(summary order)(citing Muller v. Costello, 187 F.3d
298, 313 (2d Cir. 1999)). "The inability to perform a single,
particular job does not constitute a substantial limitation in
the major life activity of working." Cameron, 335 F.3d at 65
(internal citations and quotation marks omitted). Plaintiff does
not offer any evidence that hypertension substantially limited
his ability to work except Dr. Kowal's recommendation that
Plaintiff limit his outdoor exposure and work indoors. There is
no evidence in the record that limited outdoor exposure precluded
Plaintiff from performing related jobs. See Colwell, 158 F.3d at

644-45 (finding "general restrictions imposed by [plaintiff's] doctor" to be insufficient to show significant restriction). Indeed, there is no evidence in the record to suggest that Plaintiff's hypertension substantially limited his ability to work.

Nor has Plaintiff offered any evidence that hypertension limited his ability to breathe in any substantial way. Plaintiff merely states he "began to suffer from uncontrolled hypertension along with chest tightness and breathing difficulties[.]" Plaintiff's Mem., dkt. #39 at 2. Plaintiff's own testimony offers little support for his claim:

> Q: Did any other doctor tell you that you should limit your outdoor exposure?
>
> A: I don't remember any specific conversations on that.
>
> Q: Okay.
>
> A: I know with the pulmonologist and the cardiologist I explained that when I was outside for any long time I would get shortness of breath.

Plaintiff's Deposition, dkt. #36-6, 80-81.

> Q: Did you discuss with the doctor any symptoms that you were having in [hot and humid or cold and humid] conditions?
>
> A: Correct.
>
> Q: What were those symptoms?
>
> A: Shortness of breath, dizziness. Extreme shortness of breath.

Id. at 87.

Q: In the past, with your hypertension–did you complain
to the doctor about the cold bothering you?

A: I would have shortness of breath at times. I believe
he gave me a–they call them rescue inhalers, but I
don't know if it was directly related to cold. I would
get wheezy, let's put it.

Q: Did you have any problems performing checks in the
past in cold weather or in humid temperatures?

A: I did my job.

Q: I understand that, but did you have any shortness of
breath or–

A: I don't recall any shortness of breath–

Q: –or symptoms like that–

A: –at that time, no, in the past.

Id., 88-89.

The plaintiff in Gorbea v. Verizon New York, Inc.,
complained of similar, infrequent breathing problems, which the
court found did not substantially limit her major life activity
of breathing. Gorbea, 2014 WL 917198 (E.D.N.Y. March 20, 2014).
The court found the plaintiff's deposition testimony that she had
trouble breathing insufficient to establish that the plaintiff
had a disability due to asthma. Id. at *8. The court also noted
that a doctor's note which stated that the plaintiff had
difficulty breathing after exposure to fumes failed to address
the question of the plaintiff's disability due to asthma. Id. at
*fn 10.

Here, the record shows Plaintiff suffered from similar

infrequent breathing problems, and Plaintiff's doctor's notes
fail to address the question of Plaintiff's disability due to
hypertension. Thus, Plaintiff cannot establish that hypertension
substantially limited his ability to breath.

As to the major life activity of sleeping, the only evidence
Plaintiff submits that relates to difficulty sleeping is the July
20, 2012 letter from Dr. Kowal stating that Plaintiff had been
recently treated for sleep apnea.

"Courts in this Circuit have recognized that because
'[d]ifficulty sleeping is extremely widespread,' a substantial
limitation on sleeping must be 'worse than is suffered by a large
portion of the nation's adult population.'" Gaube v. Day Kimball
Hosp., No. 3:13-CV-01845, 2015 WL 1347000, at *7 (D.Conn Mar.24,
2015)(citing Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635,
644 (2d Cir. 1998)); see also Krachenfels v. N. Shore Long Island
Jewish Health Sys., No. 13-CV-243, 2014 WL 3867560, at *13
(E.D.N.Y. July 29, 2014)(allegation that discoid dermatitis
caused plaintiff "some difficulty sleeping, without any more
detail," did not satisfy requirement to show that plaintiff's
limitation was worse than that suffered by large portion of adult
population); Dancause v. Mount Morris Cent. Sch. Dist., No.
13-CV-6019, 2013 WL 2946063, at *5 (W.D.N.Y. June 14, 2013)
(plaintiff failed to adequately plead substantial limitation
where she merely alleged that periodontal disease prevented her

from "adequately" sleeping and concentrating). Plaintiff's assertions that he has difficulty sleeping are too conclusory to meet his burden of coming forward with evidence that his hypertension substantially limits his ability to sleep. Even considering that sleep apnea is an impairment itself under the ADA, Plaintiff has still offered no deposition testimony that he has difficulty sleeping, or describing how sleep apnea has limited any major life activities.

Since Plaintiff has offered no evidence which supports that his hypertension substantially limits the major life activities of working, breathing and sleeping, he has failed to prove he suffered from an impairment that qualified as a disability under the ADA.

Alternatively, Plaintiff's response in opposition to summary judgment suggests that he can satisfy the standard for determining whether an individual is "regarded as disabled". Plaintiff's Res., dkt. #39 at 9. See Laurent v. G & G Bus Service, Inc., 2011 WL 2683201, at *5-*6 (S.D.N.Y. May 17, 2011).[6]

_____

[6]     [T]he ADA was recently amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA sets forth a new standard for determining whether a person is "regarded as having such an impairment":

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an

> Pursuant to this more lenient standard, an employee is
> "not required to show that the disability he is
> perceived as suffering from is one that actually
> limits, or is perceived to limit, a major life
> activity." <u>Darcy v. City of New York</u>, No. 06-CV-2246,
> 2011 WL 841375, at *4 (E.D.N.Y. Mar.8, 2011). Nor does
> the employee have to "show that the employer had a
> reasonable basis for perceiving him as suffering from a
> disability; [the statute] merely requires him to show
> that the employer did so perceive him." <i>Id</i>.

<u>Davis v. NYC Dept. of Educ.</u>, 10-CV-3812, 2012 WL 139255, at *5

(E.D.N.Y. Jan.18, 2012).

> The ADAAA specifies, however, that the "regarded as"
> definition of disability does not apply to impairments
> that are both transitory and minor. 42 U.S.C. §
> 12102(3)(B); <i>see also</i> 29 C.F.R. § 1630.15(f) (2011)
> ("It may be a defense to a charge of discrimination by
> an individual claiming coverage under the "regarded as"
> prong of the definition of disability that the
> impairment is (in the case of an actual impairment) or
> would be (in the case of a perceived impairment)
> 'transitory and minor.'"). An impairment is transitory
> if it has "an actual or expected duration of 6 months
> or less." 42 U.S.C. § 12102(3)(B). "Whether the
> impairment at issue is or would be 'transitory and
> minor' is to be determined objectively." 29 C.F.R. §
> 1630.15(f)(2011).

<i>Id</i>.

Plaintiff alleges that since the Defendant stated in

deposition a willingness to grant Plaintiff's reasonable

accommodation for a respirator, Defendant is "estopped from

---

> action prohibited under this chapter because of an
> actual or perceived physical or mental impairment
> whether or not the impairment limits or is perceived to
> limit a major life activity. 42 U.S.C. § 12102(3)(A).

<u>Laurent v. G & G Bus Service, Inc.</u>, 2011 WL 2683201, at *5-*6
(S.D.N.Y. 2011), adopted by 2011 WL 2693651 (S.D.N.Y. July 11,
2011).

denying that [Plaintiff] had a disability." Plaintiff's Res., dkt. #39 at 9. It appears that Plaintiff is arguing that since the Defendant agreed to provide Plaintiff a respirator, it regarded him as having an impairment. Plaintiff points to documents his physician sent to the Defendant and letters written in response by Tremblay-Glassman acknowledging Plaintiff's hypertension as proof. Plaintiff's Res., dkt. #39, 10-11. The Defendant argues that it did not regard the Plaintiff as disabled, and in any case, that Plaintiff's hypertension is transitory and minor. Defendant's Mem., dkt. #36-3 at 25. Defendant supports its argument with the fact that Plaintiff began a new job, without accommodation, within six months after he last appeared to work for the Defendant, tending to show his hypertension was transitory and minor. Id. Plaintiff does not dispute that he began a new job within six months of working for Defendant, but Plaintiff states in his deposition testimony that he did not require any accommodation at the new job because the new job did not require him to go outdoors. Plaintiff's Deposition, dkt. #36-6, 104-05. Assuming Plaintiff's new job did not require him to work outdoors or in extreme temperatures, a rational juror could conclude that the Plaintiff may have still been suffering from hypertension, therefore precluding them from finding his hypertension was transitory and minor.

Even assuming Plaintiff meets the requirements of the

"regarded-as" standard, or that he were disabled under the meaning of the Act, his claim ultimately fails because he cannot prove he suffered from an adverse action because of his alleged disability. Plaintiff claims that the Defendant refused to accommodate his alleged disability, and in doing so, constructively terminated him. Plaintiff testified, "As far as I was concerned, [the Defendant was] unwilling to work with me. They would not sit down and discuss any accommodations. I couldn't come back to work without those accommodations, so I felt like I was not working for the [Defendant] anymore." Plaintiff's Deposition, dkt. #36-6 at 94. Defendant argues that the Plaintiff was never terminated, but placed on no-pay status while Defendant awaited further medical documentation detailing Plaintiff's limitations. Defendant's Statement, dkt. #36-4 at 7. The Court finds that no evidence supports Plaintiff's claim of constructive termination; as Defendant made clear that Plaintiff's employment continued as the process of evaluating Plaintiff's condition went forward. Plaintiff cannot refuse to provide information, quit his job, and then claim constructive termination.

*Failure to Accommodate as Adverse Action*

To establish a *prima facie* case of discrimination based on an employer's failure to accommodate an employee's disability under the Americans with Disabilities Act, "an employee bears the

burden of demonstrating that: (1) he was an 'individual who has a disability' within the meaning of the statute; (2) the employer had notice of his disability; (3) he could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make such accommodation." Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir.2000).

Assuming the first three elements are met, Plaintiff has failed to demonstrate that the Defendant refused to make a reasonable accommodation for his hypertension. "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 183-84 (2d Cir. 2006)(quoting 29 C.F.R. pt. 1630, app. at 363 (2003)); see also Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C.Cir.1999)("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation"). Once the plaintiff establishes that he has requested an accommodation the employer has a duty "to investigate that request and determine its feasibility." Parker, 204 F.3d at 338 (2d Cir. 2000); see also Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 568 n.4 (2d Cir. 2000)(recognizing that an employer is obligated to "take affirmative steps to assist an employee in identifying potential accommodations."). These responsibilities conform to the "interactive process" envisioned by the ADA, in which "employers

and employees work together to assess whether an employee's disability can be reasonably accommodated." <u>Jackan</u>, 205 F.3d at 566. In evaluating a claim for failure to accommodate, therefore, "courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." <u>Beck v. Univ. of Wisconsin Bd. of Regents</u>, 75 F.3d 1130, 1135-36 (7th Cir. 1996)("[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.").

Plaintiff claims that the Defendant refused to have an interactive dialogue with him about how to achieve his reasonable accommodations. Plaintiff's Res., dkt. #39 at 15. Plaintiff argues that when he recommended the Defendant allow him to take a full shift inside the plant to meet his medical needs, the Defendant failed to respond, and therefore refused to accommodate him. <u>Id.</u> However, "[t]here is no provision requiring the employer to take account of the disabled individual's preferences in choosing the means of accommodation." <u>Fink v. New York City Dep't of Personnel</u>, 855 F.Supp. 68, 72 (S.D.N.Y.1994), aff'd, 53 F.3d 565 (2d Cir. 1995); <u>see also, e.g.</u>, <u>Gile v. United Airlines, Inc.</u>, 95 F.3d 492, 499 (7th Cir. 1996)("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable

25

accommodation."); <u>Querry v. Messar</u>, 14 F.Supp.2d 437, 445 (S.D.N.Y.1998)("An employer need only offer a 'reasonable accommodation'; it need not provide the employee with the accommodation of her choice.").

Viewing all the evidence in a light most favorable to Plaintiff, the Court finds that it was Plaintiff, not the Defendant, who terminated the reasonable accommodation process. Even considering Plaintiff's testimony that (1) Defendant did not request to meet the Plaintiff in person to discuss accommodations, (2) Defendant encouraged Plaintiff to seek advice from a medical professional that "did not exist" and (3) Tremblay-Glassman's testimony that Plaintiff's request to work indoors was an unreasonable accommodation, the Court is not persuaded that a question of material fact exists as to the cause of the breakdown of the discussion.

The first letter from Plaintiff to Defendant that included Plaintiff's diagnosis and restrictions is dated July 20, 2012. Plaintiff's Res., dkt. #39-6. Three days later, on July 23, 2012, Tremblay-Glassman notified the Plaintiff that the July 20 letter did not provide sufficient medical information to consider his return to duty. Def.['s] Mot. Summ. J., dkt. #36-12. On August 2, 2012, Plaintiff responded to Tremblay-Glassman with a second letter from his doctor. Plaintiff's Res., dkt. #39-7. Three days later, on August 6, Tremblay-Glassman responded to Plaintiff that

the letter, again, did not provide sufficient information to allow his return to work. Tremblay-Glassman encouraged Plaintiff to seek further information and specifics concerning his proposed restriction, noting that Plaintiff would "remain on sick leave while [his] leave credits allows [sic]." Def.['s] Mot. Summ. J., dkt. #36-14. Plaintiff failed to respond to this letter, and instead, "felt like" he was "not working for the [Defendant] anymore." Plaintiff's Res., dkt. #39 at 19.

The Defendant was entitled to request that Plaintiff provide more specific details concerning his restrictions and the appropriate accommodations for his alleged disability. See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 219 (2d Cir. 2001)(noting that interactive process might include, among other things, requesting information about the condition and what limitations the employee has). Plaintiff claims that the request for documentation was not specific. However, Tremblay-Glassman's requests for information are clear: "Your additional medical documentation should include an explanation of the length of time of outdoor exposure, acceptable weather conditions and temperatures." Def. Mot. Summ. J., dkt. #36-12. Plaintiff responded with a note from his doctor that his outdoor exposure should be limited to no more than 15 minute increments, however he failed to include acceptable weather conditions and temperatures. Plaintiff testified that he "went to a lot of

doctors' appointments" but the doctors conferred with his primary
care physician, and he could not recall that any of the doctors,
besides Dr. Kowal, gave him restrictions or told him to limit his
outdoor exposure. Plaintiff's Deposition, dkt. #36-6 at 81.
Indeed, Plaintiff had the opportunity to acquire more specific
information regarding his restrictions but failed to respond to
the Defendant's request.

Plaintiff's failure to provide Defendant with information
reasonably necessary to determine whether an accommodation was
needed and, if so, what would have been reasonable, is similar to
the situation in <u>Economou v. Caldera</u>, No. 99-CIV-12117, 2000 WL
1844773 (S.D.N.Y. Dec.18, 2000), <u>aff'd</u> 286 F.3d 144 (2d Cir.
2002). There, the Second Circuit affirmed a grant of summary
judgment in favor of defendants because the plaintiff was
responsible for the breakdown in an interactive process. Economou
worked for the Army Corps of Engineers. <u>Id</u>. at 3. In 1997, he
submitted a doctor's note stating that he could not work because
he was being treated for carpal tunnel syndrome and that it was
recommended that he "refrain from excessive computer use." <u>Id</u>. at
*3. The plaintiff's supervisor informed him that he could not
approve his request for sick leave on the information the
plaintiff had provided, but that "if he were to obtain more
specific details from his physician, [the supervisor] would
reconsider his request." <u>Id</u>. Instead of providing additional

information, Economou "continued to submit requests for sick leave accompanied by notes from [his doctor] with the same cursory explanation" that was in the original doctor's note. Id. at *23.

As in Economou, no reasonable jury could find that it was the Defendant, rather than Plaintiff himself, who terminated the interactive process for discussing accommodations. See Nugent v. St. Lukes-Roosevelt Hosp. Center, 303 Fed.Appx. 943, 946 (2d Cir. 2008)("An employee who is responsible for a breakdown of [the] interactive process may not recover for a failure to accommodate.").

Furthermore, the ADAAA makes clear that no failure to accommodate claim can be made, as a matter of law, for an individual who was "regarded as" disabled, rather than who was actually disabled. See 42 U.S.C. § 12201(h)("A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of this title solely under subparagraph (C) of such section."); see also Powers v. USF Holland, Inc., 667 F.3d 815, 823 n. 7 (7th Cir. 2011)("[T]he ADAAA clarified that an

individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'" (quoting 42 U.S.C. § 12201(h))). Thus the Defendant's motion will be granted on this basis.

*Constructive Discharge as Adverse Action*

The Court turns next to Plaintiff's constructive discharge claim.

> Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996)(internal citation and quotation marks omitted); see also Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003).

The Plaintiff does not argue that there was evidence of "intolerable working conditions," because he never returned to work after May 14, 2012. Plaintiff therefore argues in essence that the purported failure to accommodate is tantamount to constructive discharge.

The Sixth Circuit has stated:

> [A] complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge. [] We emphasize that our holding today does not pave the way for an employee to assert a claim for constructive discharge every time an employer fails to accommodate her disability. But when an employee makes

> a repeated request for an accommodation and that
> request is both denied and no other reasonable
> alternative is offered, a jury may conclude that the
> employee's resignation was both intended and
> foreseeable.

Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1109

(6th Cir. 2008)(internal citation and quotation omitted). The

Sixth Circuit found the defendant constructively discharged the

plaintiff in Talley. The plaintiff in Talley "approached her

supervisors on numerous occasions during her employment to

discuss her disability and possible accommodations." Talley, 542

F.3d at 1109. In response, the plaintiff's supervisor refused to

open a note from the plaintiff's doctor which he had requested,

and refused to hold a meeting to resolve the issue. Id. Plaintiff

here has not alleged that Defendant simply ignored repeated

requests for accommodation. The Plaintiff submitted two doctor's

notes to the Defendant. The Defendant responded with requests for

more information in order to determine a reasonable accommodation

for the Plaintiff. Plaintiff failed to respond and never returned

to work. Moreover, unlike the plaintiff in Talley, Plaintiff was

not forced to work in conditions which exacerbated his

disability, creating such intolerable working conditions that he

had no other choice but to resign. Therefore, Plaintiff has not

shown an adverse action in order to prove discrimination. Pena v.

Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983).

Plaintiff has failed to raise a genuine issue of material

fact with respect to the contested elements of his *prima facie* case of discrimination.  The Court will therefore grant the Defendant's motion with respect to this claim.[7]

---

[7]Even if he had carried this burden, however, the Court would grant Defendant's motion for summary judgment.

If the plaintiff in a discrimination action meets his *prima facie burden*, "the burden of production then shifts to the defendant, who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination" created when plaintiff makes out a *prima facie* case. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). If the employer makes out this burden to "articulate an explanation that, if true, would connote lawful behavior," the burden then returns to "the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for unlawful discrimination." <u>Id</u>.

The Defendant's claim that Plaintiff was not medically cleared to return to work as of August 6, 2012 is a sufficient, nondiscriminatory basis to support the actions Defendant took with regard to Plaintiff's employment. An employer is not required to allow someone not cleared to work to return to a job. That the Defendant needed more information regarding the Plaintiff's alleged disability and requested accommodations does not, by itself, give rise to an inference of disability animus necessary to rebut the Defendant's contentions. Nor has Plaintiff demonstrated any other plausible basis upon which to doubt that this request for information arose from a legitimate need for information. <u>See, e.g.</u>, <u>Dollar v. Brooklyn Hosp. Ctr.</u>, No. 10-CV-4807, 2011 WL 5117603, at *4 (E.D.N.Y. Oct. 24, 2011)(finding no discriminatory animus where the defendant requested that the plaintiff "follow reasonable rules requiring him to update [the defendant] regarding his medical condition").

Plaintiff has also failed to support his argument that Defendant's recommendation to see a physician whose specialty "did not exist" is evidence of pretext for disability discrimination. While Tremblay-Glassman admitted in her deposition that she did not personally know an industrial medicine specialist in the Albany area, this does not make her recommendation to the Plaintiff unreasonable or discriminatory. The Plaintiff's contention that "this was mere pretext" does not offer any additional support. Plaintiff's Res., dkt. #39 at 18. Plaintiff has failed to prove that Defendant's legitimate non discriminatory reason for allegedly constructively terminating Plaintiff was pretext for discrimination.

B. Retaliation Claims

    i. ADA

Plaintiff also asserts a claim of retaliation under the ADA. "To make out a *prima facie case* for retaliation, a plaintiff must demonstrate that '(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.'" Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013)(quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)).

As to the third element, an adverse employment action is generally characterized as a "materially adverse change in the terms and conditions of employment" and may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006); see also La Grande v. DeCrescente Distrib. Co., 370 Fed.Appx. 206, 211 (2d Cir. 2010)("An actionable adverse employment action is 'a materially significant disadvantage with respect to the terms of [plaintiff's] employment'[.]")(quoting Williams v. R.H.

33

<u>Donnelley</u>, *Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)(alterations in original)).

Defendant concedes the first two elements, but asserts that Plaintiff's allegations do not establish that any adverse decision or course of action was taken against Plaintiff. Defendant's Mem., dkt. #36-3 at 36. The Plaintiff argues that, by allegedly denying his accommodations, the Defendant constructively terminated him. Plaintiff offers the same argument for his retaliation claim as he does for his discrimination claim discussed above. For the same reasons, the Court finds no evidence to support a finding that Plaintiff suffered a materially adverse action. Thus, summary judgment will be granted on this claim as well.

C. NYSHRL Claims

Plaintiff asserts claims of discrimination and retaliation under the NYSHRL as well. Second Circuit cases make clear that the New York disability statute defines disability more broadly than does the ADA.[8] However, "aside from the law's unique

---

[8]The NYSHRL defines "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques[.]" N.Y. Exec. Law § 292(21)(McKinney's 2010). The NYSHRL "provides that disabilities are not limited to physical or mental impairments, but may also include 'medical' impairments." <u>State Division of Human Rights v. Xerox Corp.</u>, 65 N.Y.2d at 218-19, 491 N.Y.S.2d at 109, 480 N.E.2d 695. In addition, unlike the ADA, the NYSHRL "does not impose the requirement that the impairment substantially limit the

definition of 'disability,' claims under the NYSHRL are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas." Penberg v. HealthBridge Management, 823 F.Supp.2d 166, 182 (E.D.N.Y. 2011). Since Plaintiff has failed to offer any evidence to support he suffered an adverse action because of his alleged disability, summary judgment will be granted on these claims as well.

D. FMLA Claims

i. Retaliatory Discharge

Plaintiff's fifth cause of action is for retaliatory discharge under the FMLA. Plaintiff claims Defendant retaliated against him for taking FMLA leave, presumably by constructively terminating him.[9] Complaint, dkt. #1 at ¶ 63. In order to establish a prima facie case for retaliation under the FMLA, plaintiff must prove that: 1) he exercised rights protected under the FMLA; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). As explained above, Plaintiff cannot show he suffered an adverse employment action. Thus, summary judgment

---

individual's normal activities." Krikelis v. Vassar College, 581 F.Supp.2d 476, 486 (S.D.N.Y.2008).

[9]Plaintiff does not set forth a method of retaliation in his complaint.

must be granted for this claim as well.

ii. Interference with Rights

Plaintiff's final cause of action alleges that the Defendant interfered with his FMLA rights. Plaintiff claims that Defendant denied him his right under the FMLA to return to his position as Water Treatment Plant Operator. Complaint, dkt. #1 at ¶ 66. Plaintiff asserts he "took approved FMLA [leave] in connection with his serious medical condition/disability. Defendant prevented him from returning to work as a Water Treatment Plant Operator and constructively terminated him." Plaintiff's Response to Defendant's First Set of Interrogatories, dkt. #36-17 at ¶ 12. An interference with FMLA rights claim under 29 U.S.C. § 2615(a)(1) requires Plaintiff to satisfy five elements: (1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined in FMLA; (3) that he was entitled to leave under FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under FMLA. Geromanos v. Columbia University, 322 F.Supp.2d 420, 427 (S.D.N.Y. 2004).

Defendant does not contest that Plaintiff was an "eligible employee" under the FMLA, that Defendant is an employer covered by the Act's terms, or that Plaintiff was entitled to leave under the FMLA. Neither party addresses the adequacy of Plaintiff's notice to the Defendant of his intention to take leave. The Court

36

must determine whether Plaintiff properly invoked FMLA rights in order to reach the question of whether Defendant interfered with these rights.

In order to invoke FMLA rights, an employee must provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." C.F.R. 29 § 825.393. Additionally, "when an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." Id. It is the employer's duty to obtain any additional required information, in the form of a medical certificate, to determine that the employee has a serious health condition that makes him eligible for leave. In addition to a medical certificate, the employer may also later request a certification that the employee is fit to return to work. Department of Labor ("DOL") regulations distinguish between a medical condition certificate and a fitness-for-duty certification. As to condition certifications, the regulations provide that an employer may "require that an employee's...serious health condition...be supported by certification." 29 C.F.R. § 825.305(a). The request for a condition certification should be made when the employer recognizes that an employee may be qualified for FMLA leave (id. § 825.300(b)(1)), but an employer may request the condition certification later if it "has reason to question the

appropriateness of leave or its duration." Id. § 825.305(b). If an employer requests a condition certification, the employee will have a minimum of 15 days to comply with the employer's request, after which a failure to provide the certification will entitle the employer to deny FMLA leave. Id. § 825.313(a)-(b). The regulations allow the employee to comply with the condition certification requirement by authorizing his medical provider to speak directly with the employer. Id. § 825.305(d).

As to fit-for-duty certifications, the regulations state:

> An employer may seek a fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification from the employee's health care provider must certify that the employee is able to resume work. Additionally, an employer may require that the certification specifically address the employee's ability to perform the essential functions of the employee's job. In order to require such a certification, an employer must provide an employee with a list of the essential functions of the employee's job no later than with the designation notice required by § 825.300(d), and must indicate in the designation notice that the certification must address the employee's ability to perform those essential functions. If the employer satisfies these requirements, the employee's health care provider must certify that the employee can perform the identified essential functions of his or her job. Following the procedures set forth in § 825.307(a), the employer may contact the employee's health care provider for purposes of clarifying and authenticating the fitness-for-duty certification. Clarification may be requested only for the serious health condition for which FMLA leave was taken. *The employer may not delay the employee's return to work while contact with the health care provider is being made*.

29 C.F.R. § 825.312(b) (emphasis added).

There is a genuine issue of material fact as to whether the Defendant prevented Plaintiff from returning to work. Once the Plaintiff gave notes to the Defendant from his doctor stating that he was being treated for hypertension and required restrictions at work, this triggered Defendant's duty to determine whether Plaintiff was fit to return to work. As the Regulations plainly state, the employer is not entitled to delay the employee's return to work during this inquiry. It is clear from the record that Defendant was aware Plaintiff was ill, and there is a question of material fact as to whether Defendant upheld its duty under the FMLA to properly request the information they needed to reinstate Plaintiff. Tremblay-Glassman admitted:

> Q: Did any employee at the town ask [Plaintiff] to fill out a family medical leave application?
>
> A: No. But we didn't-he reached out to us for his benefits, such as long-term disability. So [Plaintiff] was active in trying to pursue his benefits.
>
> Q: But you never-but nobody at the town actually told him, you should still fill out this application for Family Medical Leave Act; correct?
>
> A: No.
>
> Q: But the town was aware that he was, in fact, ill; correct?
>
> A: Yes.
>
> Q: And he couldn't work at the time for a period of time; correct?
>
> A: Yes.

> Q: And you were aware that it was hypertension; correct?

> A: Right.

Mary Tremblay-Glassman Deposition, dkt. #36-7 at 117. Moreover, Plaintiff gave Defendant permission to contact his doctor directly to determine the information they needed, but Defendant failed to do so. Id. at 128. Carpo v. Wartburg Lutheran Home for the Aging, No. 05-CV-1169, 2006 WL 2946315, at *5 (E.D.N.Y. Oct. 16, 2006)("[W]hen...an employer claims to find ambiguity in a return-to-work certificate...the employee must be allowed to remain on the payroll while clarification is sought."). Defendant contends that it was awaiting further medical information from Plaintiff, and assumed Plaintiff would eventually return to work. Plaintiff argues that he was unable to return to work due to Plaintiff "stonewalling" his requests for accommodation. Since there is a question of material fact as to whether Defendant interfered with Plaintiff's rights under the FMLA by not allowing Plaintiff to return to work while they made an inquiry into his condition, summary judgment must be denied on this claim.

## IV. CONCLUSION

For the foregoing reasons stated above, Defendant's motion for summary judgment, dkt. #36, will be **GRANTED** in part and **DENIED** in part, as follows:

1. The motion with be granted with respect to Plaintiff's claims for: ADA discrimination; NYSHRL discrimination;

ADA retaliation; NYSHRL retaliation; and FMLA
retaliatory discharge.

2.    The motion will be denied with respect to Plaintiff's
FMLA interference claim.

**IT IS SO ORDERED.**

Dated:September 9, 2015

Thomas J. McAvoy
Senior, U.S. District Judge